# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.     Case No. 09-CR-7

DEMETRIUS E. JEFFERSON,

        Defendant.

## RECOMMENDATION TO THE HONORABLE J.P. STADTMUELLER AND ORDER

On January 6, 2009 the grand jury returned a three count indictment charging Demetrius E. Jefferson ("Jefferson") with possessing with intent to distribute more than 50 grams of crack cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A), (Count 1), possessing a firearm as a convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), (Count 2), and possessing a firearm in furtherance of a drug trafficking offense, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i), (Count 3). (Docket No. 1.) On February 26, 2009, Jefferson filed a motion to suppress evidence on the basis that search warrant that led to the seizure of the evidence that forms the basis for the indictment, was not supported by probable cause. (Docket No. 14.) Jefferson also filed a motion seeking to compel the government to disclose the identity of a confidential informant. (Docket No. 15.) The government responded to these motions, (Docket Nos. 17 and 16, respectively), and Jefferson replied regarding his motion to suppress, (Docket No. 18). The pleadings on these motions are closed and the matters

are ready for resolution. A final pretrial conference is scheduled for April 7, 2009 and a jury trial is scheduled to commence on April 13, 2009 before the Honorable J.P. Stadtmueller.

**MOTION TO SUPPRESS**

On the evening of October 6, 2008, a Milwaukee County Circuit Court Judge approved a no-knock search warrant for an apartment on North 51st Street in Milwaukee. (Docket No. 14-2.) In support of this search warrant, a Milwaukee Police Officer submitted an affidavit wherein he outlined information he received from a citizen witness ("CW"), who he states is truthful and reliable because the CW approached law enforcement with this information, the information was against the CW's penal interests, and certain aspects of the CW's information were corroborated by law enforcement. (Docket No. 14-2 at 3.) The CW stated that he knows Jefferson and has observed Jefferson numerous times wearing a bullet proof vest and in possession of three different caliber handguns. (Docket No. 14-2 at 3.) Further, the CW observed Jefferson cooking, packaging, and distributing crack cocaine in 1/8 ounce quantities from Jefferson's residence.

The affiant police officer also states in the affidavit that he corroborated the CW's information that Jefferson possessed three different caliber handguns, a bullet proof vest, and narcotics with information received from a confidential informant ("CI"). (Docket No. 14-2 at 3-4.) Further, the CW stated that he was inside Jefferson's residence in the last 72 hours and observed "crack cocaine packaged in a plastic baggy" in the residence. (Docket No. 14-2 at 4.) Further, the affiant states that he is aware that Jefferson had twice been convicted of possession of cocaine, as well as robbery, battery, and disorderly conduct, and is currently on probation. (Docket No. 14-2 at 6.)

Jefferson contends that the affidavit fails to establish probable cause for the search of the residence because the affidavit does not provide sufficient details outlining the circumstances under which the CW observed the crack cocaine. (Docket No. 14 at 5.) For example, the affidavit does not

2

state whether the CW purchased cocaine from the residents of the apartment, whether "any person associated with the residence exercised any ownership or control over the baggie," nor does the CW provide the quantity of the cocaine. (Docket No. 14 at 5.) If it was an exceptionally small amount of suspected crack cocaine, it would be unlikely to be in the apartment three days later. (Docket No. 14 at 5.) Further, there is no indication as to how the CW was able to identify the substance as crack cocaine. (Docket No. 14 at 5-6.) Additionally, there is no information as to how the CW came to be inside the apartment and thus it is impossible to evaluate the CW's reliability. (Docket No. 14 at 6.) Finally, although Jefferson acknowledges that the affidavit establishes probable cause to believe that Jefferson was a felon in possession of a firearm, the affidavit does not establish that there is probable cause to believe that those firearms would be found in the residence. (Docket No. 14 at 6-7.) The affidavit simply states that the CW "knows of three firearms in the residence" but does not provide how the CW obtained this knowledge. (Docket No. 14 at 7.)

**Probable Cause**

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." United States v. Peck, 317 F.3d 754, 755-56 (7th Cir. 2003) (citing United States v. Roth, 391 F.2d 507, 509 (7th Cir. 1967)). Probable cause is a fluid concept, United States v. McNeese, 901 F.2d 585, 592 (7th Cir. 1990), determined by the "totality of the circumstances." Illinois v. Gates, 462 U.S. 213, 238 (1983). An affidavit has made a proper showing of probable cause when it sets forth facts "sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." McNeese, 901 F.2d at 592; Gates, 462 U.S. at 238 (probable cause exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place); United States v. Gilbert, 45 F.3d 1163, 1166 (7th Cir.1995). "Probable cause requires only a probability or a

3

substantial chance of criminal activity, not an actual showing of such activity." Gates, 462 U.S. at 244 n.13.

The probable cause determination of the judicial officer who issued a warrant shall be afforded great deference. Gates, 462 U.S. at 236. This court does not conduct a de novo review of the probable cause determination of the judicial officer who issued the warrant. See id. Rather, this court shall upset a probable cause determination only if there was not a "substantial basis" for the issuing court to believe that a search would uncover evidence of wrongdoing. Id. There is a substantial basis for the issuing of a warrant when the affidavit, "read as a whole in a realistic and common sense manner . . . allege[s] specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated." United States v. Newsom, 402 F.3d 780, 782 (7th Cir. 2005) (quoting United States v. Spry, 190 F.3d 829, 835 (7th Cir. 1999)).

Although Jefferson in his motion and reply refers only to an "informant," the affidavit refers to two separate confidential sources, a citizen witness and a confidential informant (with the exception of a single instance in paragraph 6 where the citizen witness is referred to as an "informant"). The general connotation of "informant" in the criminal justice context is not merely one who provides information, but rather a person providing information to law enforcement and who is closely intertwined in the crimes and criminals that are being investigated. See Wayne R. LaFave, *Search and Seizure*, § 3.3 (3d ed. 1996). The distinction between an informant and a witness or a victim is important in the Fourth Amendment context because information from an informant must be closely scrutinized whereas information from a witness or a victim is entitled to a presumption of reliability. Id.; see also United States v. Towns, 913 F.2d 434, 441 (7th Cir. 1990) (citing United States v. Rowell, 612 F.2d 1176, 1178-79 n.4 (7th Cir. 1980)) ("[A] citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal

activity themselves . . . ."); Hebron v. Touhy, 18 F.3d 421, 422 (7th Cir. 1994) (citing Gramenos v. Jewel Cos., 797 F.2d 432, 439 (7th Cir. 1986)) ("[R]eports [from victims of crimes] ordinarily establish probable cause."). Only if a report from a citizen or a victim of a crime would cause a reasonable officer to be suspicious does the Fourth Amendment require additional investigation. See Hebron, 18 F.3d at 422-23; United States v. Decoteau, 932 F.2d 1205, 1207 (7th Cir. 1991) ("[I]f it seems reasonable to the police to believe that the eyewitness was telling the truth, they need not take any additional steps to corroborate the information regarding the crime before taking action.") (citing Gramenos, 797 F.2d at 439 ("[W]hen an officer has received his information from some person -- normally the putative victim or an eye witness -- who it seems reasonable to believe is telling the truth . . . he has probable cause.") (internal citation and quotation marks omitted)).

In this Circuit, it is unclear precisely what level of scrutiny should be applied to information received from citizen witnesses as opposed to confidential informants. See, e.g., United States v. Fife, 2008 U.S. Dist. LEXIS 101331 (E.D. Wis. 2008). Nevertheless, the well-established factors repeatedly set forth regarding how to analyze information received from an informant provide guidance as to how to analyze information provided from citizen witnesses, see United States v. Robinson, 546 F.3d 884, 888 (7th Cir. 2008), although the degree of scrutiny need not be as intense. See United States v. Fife (E.D. Wis. 08-CR-242, Docket No. 18 at 6-8). These factors are:

> (1) whether the informant personally observed the events, (2) the degree of detail shown in the informant's statements, (3) whether the police independently corroborated the information, (4) the interval of time between the events and application for a warrant, and (5) whether the informant appeared in person before the judicial officer who issued the warrant.

United States v. Mykytiuk, 402 F.3d 773, 776 (7th Cir. 2005) (citing United States v. Koerth, 312 F.3d 862, 866 (7th Cir. 2002); United States v. Jones, 208 F.3d 603, 609 (7th Cir. 2000)).

The affidavit is missing certain details that the court would ordinarily expect to be present in an affidavit submitted in support of a search warrant. Most significantly, except for the statement

5

that the CW observed crack cocaine within the residence in the last 72 hours, missing are any indications as to when the relevant events occurred. Thus, a reviewing judicial officer is left to ask, when did the CW and CI observe Jefferson with a bulletproof vest and three different handguns, and when did the CW observe Jefferson cooking, packaging, and distributing crack? According to the affidavit, Jefferson has two prior convictions for possession of cocaine, including one in which he was convicted of possession with intent to distribute (provided it is safe to assume that this is what "Possession w Int Cocaine" means, (Docket No. 14-2 at 6)), and thus it is hardly surprising that at some point in the past, Jefferson may have been observed engaging in these actions. Without any indication that the CW and CI's observations were recent, this historical information does not necessarily indicate that controlled substances were likely to be found presently within his apartment.

However, viewing the affidavit as a whole in a practical and common sense manner and affording great deference to the determination of the judicial officer who issued this warrant, it is the conclusion of this court that there is a substantial basis to support the judicial officer's determination that probable cause existed to search the subject residence for controlled substances.

As a citizen witness who voluntarily provided information to law enforcement, the CW is entitled to a presumption of reliability. To the extent that the CW's information might be suspect in that the CW may be involved in illegal activity, this concern is mitigated by the fact that the CW voluntarily provided information against his or her penal interests. See, e.g., United States v. Johnson, 289 F.3d 1034, 1039 (7th Cir. 2002) (citing United States v. Harris, 403 U.S. 573, 583-84 (1970) ("Admissions of a crime . . . carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search.")). The relevant information, specifically that the CW observed crack cocaine, was based upon the CW's firsthand knowledge, and this observation occurred shortly before the issuance of the warrant. Further, much of the information provided by

6

the CW, including information of a more personal nature such as Jefferson's prior addresses, probation status including Jefferson's probation agent's name and restrictions associated with his probation, and even his probation agent's cellular telephone number, was corroborated by law enforcement, and demonstrates that the CW knew Jefferson well and thus was likely to know if Jefferson possessed cocaine in his residence. Finally, certain information provided by the CW was corroborated law enforcement and by a separate CI. See, e.g., United States v. Lloyd, 71 F.3d 1256, 1263 (7th Cir. 1995) ("The degree of detail that an informant provides, as well as the corroboration by an officer's independent investigation of the informant's information, also serve to support a finding of reliability.")

Although the affidavit does not indicate the quantity of crack cocaine observed by the CW, and the amount of controlled substances observed is relevant to the question of whether controlled substances are likely to still be present at the target location, when viewed alongside all other factors set forth in the affidavit, and in light of the Seventh Circuit's recent decision in United States v. Garcia, 528 F.3d 481, 486 (7th Cir. 2008), the court concludes that the absence of the quantity of the controlled substances observed does not lead to a conclusion that there was an absence of probable cause to search the residence.

In a factually similar case, the Seventh Circuit Court of Appeals noted that, like here, "the affidavit lack[ed] much detail from the informant, . . . for example, how the informant came to be inside the apartment, who was in the apartment at the time, or how much cocaine he saw." Garcia, 528 F.3d at 486. Nonetheless, the court held that that the affidavit established probable cause because, as in this case,

> the information obtained from the informant was based on firsthand observations. The affidavit specifically stated that the informant had been inside the apartment and had observed a substance he believed to be cocaine, packaged in a plastic baggie.

7

> . . . The time lapse between the officers acquiring of the information and their application for the warrant--no more than 72 hours--was short. And the affidavit provided information to establish the credibility of the informant . . . .

Id. at 486.

Therefore, it is the conclusion of this court that the affidavit sufficiently set forth probable cause to believe that controlled substances may be found in the target residence. On the other hand, in light of the fact that there is a complete absence of any time period associated with when the CI or CW observed Jefferson with firearms and body armor, (aside from the unsupported statement, "The citizen witness knows of three firearms in the residence," (Docket No. 14-2 at 5), which suggests that the firearms were presently within the residence), it is the conclusion of this court that the affidavit failed to establish probable cause to search the target residence for firearms. Despite this deficiency, the court concludes that any firearms seized from the residence need not be suppressed because, in light of the fact that the affidavit established probable cause to search the residence for controlled substances, the firearms would have been inevitably discovered during that search and subject to seizure pursuant to the plain view exception to the Fourth Amendment's warrant requirement.

"[I]nevitable discovery involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment and does not require a departure from the usual burden of proof at suppression hearings." Nix v. Williams, 467 U.S. 431, 444 n.5 (1984). "[W]hat makes a discovery 'inevitable' is not probable cause alone, . . . but probable cause plus a chain of events that would have led to a warrant (or another justification) independent of the search.." United States v. Brown, 64 F.3d 1083, 1085 (7th Cir. 1995). That chain of events was securing and executing a search warrant to search for controlled substances. Because a firearm could be found any place controlled substances may be found, a thorough search for controlled substances would have inevitably discovered the firearms. Upon discovering these firearms,

8

because, as is explained in the affidavit, the officers knew that Jefferson was a convicted felon, the officers would have been entitled to seize these firearms under the plain view doctrine, see, e.g., Horton v. California, 496 U.S. 128, 136 (1990), as evidence of the crime of possession of a firearm by a felon.

Alternatively, any firearms seized, or any controlled substances seized if this court were to accept Jefferson's contention that the affidavit failed to establish probable cause to search the residence for controlled substances, need not be suppressed because the police officers who obtained and executed the warrant could have reasonably believed that they had obtained a valid warrant. See United States v. Leon, 468 U.S. 897 (1984).

**Leon Good Faith Exception**

Under the good faith exception recognized in Leon, suppression would be appropriate only if the affidavit was so lacking in probable cause that no reasonable police officer could have believed that the warrant was valid. Id. at 922. If a police officer could have reasonably relied upon the search warrant, then evidence seized pursuant to the warrant shall not be suppressed simply because the search warrant was later determined to be defective. Id. "If a defendant is successful in establishing the invalidity of the search warrant, the burden then shifts to the Government to establish that the police relied in good faith on the judge's decision to accept the affidavit and issue the warrant." United States v. Koerth, 312 F.3d 862, 868 (7th Cir. 2002). A police officer's decision to seek a warrant is prima facie evidence of good faith. United States v. Harju, 466 F.3d 602, 607 (7th Cir. 2006); United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir. 2004); Koerth, 312 F.3d at 868. Thus, the burden falls upon the defendant to rebut this prima facie case. Harju, 466 F.3d at 607.

Because the test is an objective one, it is not necessary that this court conduct an evidentiary hearing to determine whether the particular officers involved in the execution in the warrant at issue

9

in this case did, in fact, rely upon it. The question is whether a reasonable and well-trained police officer would have believed that this warrant was valid. See Leon, 468 U.S. at 922 n.3; see also, United States v. Dickerson, 975 F.2d 1245, 1250 (7th Cir. 1992).

Police officers are not expected to be trained as lawyers and are not required review search warrants with the scrutiny demanded from a judicial officer. "Judicial officers have the responsibility to determine whether there is probable cause to issue a warrant; police officers should not be expected to question that determination." Harju, 466 F.3d at 606; see also, Illinois v. Krull, 480 U.S. 340, 349 (1987) ("It is the judicial officer's responsibility to determine whether probable cause exists to issue a warrant, and, in the ordinary case, police officers cannot be expected to question that determination."); Massachusetts v. Sheppard, 468 U.S. 981, 989-90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested."). However, "[p]olice officers in effecting searches are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles," United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (quoting United States v. Brown, 832 F.2d 991, 995 (7th Cir. 1989)), and therefore cannot blindly rely upon a search warrant simply because it bears the signature of a judge.

As explained above, this court believes that with respect to searching for controlled substances, the warrant was supported by probable cause. In light of the fact that a state court judge and this court have both concluded that the affidavit established probable cause, the court finds that it would not be unreasonable for the police officers involved in the search warrant to believe that they had obtained a valid warrant to search the target residence for controlled substances.

Regarding firearms, although this court concludes that the affidavit did not establish probable cause, the court finds that a reasonable police officer could believe that the affidavit set

10

forth probable cause for the seizure of firearms. The affidavit bears the indicia of probable cause. It explicitly discusses the CW and CI observing Jefferson with firearms and states that the CW knows of three firearms in the residence. The absence of any indication as to when the CW and CI made these observations is a defect that a judicial officer, not necessarily a police officer, should have caught. Accordingly, the court concludes that, alternatively, the firearms seized pursuant to the search warrant need not be suppressed because a reasonable police officer could have reasonably relied upon the search warrant. Therefore, for these reasons the court shall recommend that Jefferson's motion to suppress be denied.

**MOTION TO DISCLOSE CONFIDENTIAL INFORMANT**

Jefferson seeks the court to compel the government to disclose the identity of a "confidential informant," because this person was allegedly a transactional witness. (Docket No. 15.) Although he indicates he seeks disclosure of the "confidential informant" referred to in the search warrant affidavit, it is not entirely clear precisely whose identity Jefferson seeks. As this court noted above, the affidavit refers to two confidential sources: a citizen witness and a confidential informant. Although Jefferson refers to a confidential informant, because he refers to the "confidential informant" seeing a small baggie of cocaine inside Jefferson's residence within the last 72 hours, it appears that Jefferson is actually seeking the identity of the citizen witness and not the confidential informant referred to in the affidavit.

As a general rule, the government enjoys a limited privilege of withholding the identity of an informant. United States v. Bender, 5 F.3d 267, 269 (7th Cir. 1993). This privilege encourages citizens to perform their obligation to communicate their knowledge of the commission of crimes to law enforcement officials, by preserving the informant's anonymity. United States v. Jefferson, 252 F.3d 937, 940 (7th Cir. 2001). However, the government's privilege is not absolute. It may be overcome if the defendant establishes that the disclosure of the informant's identity is either

11

relevant and helpful to his defense or essential to a fair determination of a cause. Id. at 941; Roviaro v. United States, 353 U.S. 53, 60-61 (1957); see United States v. Valles, 41 F.3d 355, 358 (7th Cir. 1994).

Disclosure of a confidential informant's identity "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62. Factors to be considered are whether the informant is a transactional witness and whether the informant's testimony is relevant and could assist the defendant. United States v. Bender, at 270.

Ultimately, to determine whether the government is required to disclose the identity of an informant, the court must balance the public interest in obtaining information necessary to apprehend those who have committed crimes against the defendant's interest in fair trial. Andrus, 775 F.2d at 841; Jefferson, 252 F.3d at 940-41.

In the present case, it is the evidence that was seized pursuant to the search warrant discussed above that led to the present charges against Jefferson. Jefferson is charged with crimes relating to the alleged possession of contraband. There is no charge of any actual distribution of controlled substances nor is there a charge of conspiracy. There is no "transaction," and thus there is no transactional witness. Further, Jefferson has failed to present any indication as to how the disclosure of the identity of the citizen witness is necessary to support any potential defense. Accordingly, Jefferson has failed to demonstrate that the government's informer privilege must yield, and therefore the court shall deny Jefferson's motion to compel the disclosure of the citizen witness.

**IT IS THEREFORE RECOMMENDED** that Jefferson's motion to suppress, (Docket No. 14), be **denied**.

**IT IS THEREFORE ORDERED** that Jefferson's motion to compel the disclosure of the citizen witness, (Docket No. 15), is **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 17th day of March 2009.

s/ AARON E. GOODSTEIN
U.S. Magistrate Judge