# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                 Case No. 09-CR-7

DEMETRIUS E. JEFFERSON,

        Defendant.

_____

## ORDER

On January 5, 2009, a grand jury sitting in the Eastern District of Wisconsin returned a three count indictment against Demetrius E. Jefferson ("Jefferson"), charging Jefferson with possessing crack cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(I). (Docket #1). At his arraignment hearing, Jefferson pleaded not guilty to all counts. (Docket #7). On February 26, 2009, Jefferson moved to suppress evidence seized by police during a search of an apartment, and to compel the government to disclose the identity of a confidential informant. (Docket ##'s 14, 15). After the parties briefed the issues, United States Magistrate Judge Aaron E. Goodstein issued an order denying Jefferson's motion to compel and recommending that Jefferson's motion to suppress be denied. (Docket #19). Jefferson filed a timely objection to the magistrate's recommendation on Jefferson's motion to suppress, and to the

magistrate's order denying Jefferson's motion to compel. Jefferson also seeks leave to file a *pro se* objection in addition to the objections filed by his appointed counsel. Before addressing Jefferson's motions, the court briefly sets forth the underlying facts of the case.

**BACKGROUND**

On October 6, 2008, a Milwaukee County Circuit Court judge signed a no-knock search warrant for an apartment located on North 51st Street in Milwaukee, Wisconsin. (App. A, Docket #14). The warrant described the following objects of the search: (1) cocaine; (2) scales, paper packets, plastic bags and other items used for packaging; (3) drug-related paraphernalia, records and money; (4) documents, utility bills, keys, and other items showing who controlled the premise; (5) weapons; and (6) cell phones, beepers and other telecommunications devices.

Attached to the warrant was an affidavit completed by an officer of the Milwaukee Police Department ("MPD"). In the affidavit, the officer cites a citizen witness ("CW") as his main source of information. The CW claimed to have observed Jefferson "numerous times wearing a bullet proof vest, and in possession of 3 different handguns, a 9mm, .380, and .45 caliber handguns [sic]." (Aff. 4, App. A, Docket #14). The CW also claimed to have seen Jefferson "cooking, packaging, and distributing 'crack' cocaine in the form of '8 balls'. . . from the door of [Jefferson's] residence." (Aff. 4, App. A, Docket #14). According to the affidavit, the CW had been inside the apartment within the previous 72 hours and had observed

crack cocaine in a plastic baggy. (Aff. 6, App. A, Docket #14). The CW claimed to have recognized the substance as crack cocaine because the CW had seen Jefferson package, distribute and sell crack in the past, and had seen baking soda and dietary supplements in the apartment.[1] (Aff. 6, App. A., Docket #14).

Also in the affidavit, the MPD officer states that he considered the CW to be reliable because the CW had initiated contact with law enforcement, and had given police information against his or her penal interest. (Aff. 4, App. A, Docket #14). The officer stated that police were able to corroborate detailed information the CW provided, including Jefferson's gang affiliation, his past addresses, past arrests, as well as his probation status and the name and cell phone number of Jefferson's probation agent. (Aff. 6, App. A, Docket #14). The officer also averred that a confidential informant ("CI") confirmed much of what the CW had told police, including the location in which Jefferson kept the guns, vest and narcotics. (Aff. 5, App. A, Docket #14). The supporting affidavit included a paragraph stating Jefferson had prior criminal convictions, including cocaine possession crimes, robbery and disorderly conduct. (Aff. 13, App. A, Docket #14). At the time when the search

---

[1]The presence of baking soda and dietary supplements in an apartment may seem benign in isolation. However, the court notes that crack cocaine is formed by dissolving sodium bicarbonate, the active ingredient in baking soda, with powder cocaine in boiling water. *See* U.S. Sentencing Commission, 2007 Report to the Congress: Cocaine and Federal Sentencing Policy, 62-63, B-15 (May 2007), *http://www.ussc.gov/r_congress/cocaine2007.pdf*. Crack cocaine can be further diluted or "cut" by adding, among other things, Inositol, which is an ingredient found in certain dietary supplements. *See* The End of Cocaine the Beverage, Posting of Mike Nizza to The Lede, N.Y. Times News Blog, *http://thelede.blogs.nytimes.com/2007/05/07/the-end-of-cocaine-the-beverage/*, (May 7, 2007) (discussing the renaming of an energy drink formerly known as "Cocaine," which ironically contained Inositol) (last visited April 17, 2009); *see also* Products that contain Active Ingredient - Inositol, Dietary Supplements Labels Database, U.S. Nat'l Library of Med., *http://dietarysupplements.nlm.nih.gov/dietary/brIngred.jsp?contain=Inositol&id=1138&sort=brand* (last visited April 17, 2009).

warrant was sought, Jefferson was apparently on probation with a home monitoring bracelet and subject to a curfew. (Aff. 13, App. A, Docket #14).

According to the government, police executed the warrant on October 7, 2008, and seized digital scales, sandwich baggies, cutting agents, cocaine base, a 0.38 pistol and 9 millimeter ammunition. (Gov't Resp., n.1, Docket #17).

## ANALYSIS

Before the court reviews the magistrate's recommendation and order, the court must consider the scope of Jefferson's objections. Jefferson's counsel filed a timely objection and moved for leave to file additional objections that Jefferson crafted *pro se*. In support of the motion for leave to file *pro se* objections, Jefferson's counsel states that Jefferson has insisted on submitting his own objections. Yet, Jefferson's counsel is unwilling to sign Jefferson's *pro se* objections due to his obligations under Fed. R. Civ. P. 11(b). While a criminal defendant has the right to defend himself or herself with or without the assistance of counsel, he or she has no constitutional right to hybrid representation. *See United States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002). Allowing a criminal defendant to act as co-counsel, therefore, is within the discretion of the court. *Id.* 671-72. Jefferson's proposed *pro se* objection is relatively coherent and well researched, and although hybrid representation is generally disfavored, the court will consider Jefferson's *pro se* filing to the extent it contains legitimate objections not addressed in Jefferson's counsel's objections. The court now turns to the merits of Jefferson's motion to suppress.

-4-

**1. Motion to Suppress**

With respect to Jefferson's motion to suppress, Magistrate Goodstein found that the information provided in the affidavit was sufficiently detailed and reliable to establish probable cause to believe that controlled substances would be found in the apartment. (Recommendation and Order, March 18, 2009, 6, Docket #19). The magistrate also found that the affidavit failed to establish probable cause to search for firearms because it did not include any time frame as to when the firearms were seen in the apartment. However, the magistrate concluded that evidence of the firearms recovered during the search need not be suppressed because the evidence would have inevitably been discovered when police searched for the cocaine and drug paraphernalia. (Recommendation and Order, March 18, 2009, 8, Docket #19). The magistrate further found that suppression of the evidence seized was not appropriate because police could have reasonably relied on the search warrant. (Recommendation and Order, March 18, 2009, 9-11, Docket #19).

The court reviews *de novo* those portions of the magistrate's recommendation to which Jefferson has made timely objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(3). Jefferson, through his counsel, makes two objections to the recommendation: (1) that the magistrate misconstrued the supporting affidavit when determining the reliability of the citizen witness and confidential informant; and (2) that the citizen witness should be considered a confidential informant. In his *pro se*

filing, Jefferson argues that the affidavit lacks sufficient detail to establish probable cause, and that the citizen witness was unreliable.

Both Jefferson and his counsel argue that the magistrate's recommendation failed to appropriately distinguish between information in the affidavit attributable to the confidential informant ("CI") and that which was attributable to the citizen witness ("CW"). The magistrate found that the affidavit established that the CW claimed to have seen crack cocaine inside the apartment within 72 hours of the warrant being issued. (Recommendation and Order, March 18, 2009, 2, Docket #19). Jefferson argues that this finding was erroneous, and directs the court to paragraph six of the affidavit, which states: "the affiant [the MPD officer] was informed by the citizen witness referred to above that within the past 72 hours *informant* was inside the premises of Demetrius E. Jefferson . . . ." (Aff. 13, App. A, Docket #14) (emphasis added). Jefferson suggests that this portion of the affidavit shows that the CI actually observed crack cocaine inside the apartment, and that the CW was merely reciting to police what the CI had told the CW. But reading on, paragraph six of the affidavit more fully states the following:

> 6) That affiant was informed by the citizen witness referred to above that within the past 72 hours informant was inside the premises of Demetrius E, Jefferson . . . more particularly described in paragraph 7 of this affidavit and personally observed "crack" cocaine packaged in a plastic baggy, that the *citizen witness* knows that this is "crack" cocaine because the *citizen witness* has personally observed the suspect, Demetrius E, Jefferson . . . cook, package and distribute the "crack" cocaine and that the *citizen witness* has observed cutting agents such as baking soda and dietary supplements and has observed the suspect . . . personally sell the "crack" cocaine.

-6-

(Aff. 13, App. A, Docket #14) (emphasis added).

Reading paragraph six of the affidavit as a whole, Jefferson's interpretation falls into the category of hypertechnical. The court must view affidavits in support of a search warrant in a commonsense manner. *See Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Common sense leads the court to read paragraph six to mean that the CW observed a plastic baggy containing a substance the CW understood to be crack cocaine in the apartment to be searched within 72 hours of the application and issuance of the warrant. Based on this entire affidavit, the reference to the informant in paragraph six appears to be an anomaly.

Jefferson next argues that the information in the affidavit provided by the CW should be analyzed for reliability as if it had come from a confidential informant. Jefferson argues that the CW in this case was more like a confidential informant than an ordinary citizen witness because the CW provided information to police that may have implicated the CW in a crime. Although never explicitly stated, Jefferson's argument presupposes that the court will always treat a citizen witnesses' tip differently from that of a confidential informant. But this is not necessarily the case. Although disinterested citizen informants are, in general, considered "more reliable than the usual police informants who are often mired in some criminal activity themselves," the court, when assessing probable case, views a citizen witness in much the same manner as it would any other informant. *United States v. Towns*,

-7-

913 F.2d 434, 440 (7th Cir. 1990). That is, the informant's veracity and reliability, as well as the basis of the informant's knowledge, must be sufficient, under a totality of the circumstances, to establish probable cause. *See id.*

In the recommendation, the magistrate wrote that "[a]s a citizen witness who voluntarily provided information to law enforcement, the CW is entitled to a presumption of reliability." (Recommendation and Order, March 18, 2009, 6, Docket #19). The court recognizes that presuming a citizen witness to be reliable when that witness is not completely disinterested in the alleged crime may be problematic as a matter of law. However, the court is not convinced the magistrate applied the incorrect legal standard to assess the CW's reliability. To the contrary, the magistrate recognized that "the well-established factors repeatedly set forth regarding how to analyze information received from an informant provide guidance as to how to analyze information provided from citizen witnesses." (Recommendation and Order, March 18, 2009, 5, Docket #19). Therefore, the court finds that the magistrate applied the appropriate legal standard when assessing information provided by the CW. Moreover, because the court does not consider the CW in this case to fit the traditional mold of a disinterested citizen witness, the court will not place greater weigh on the CW's account than it would any other informant.

In his *pro se* objections, Jefferson attacks the magistrate's assessment of the CW's reliability and the overall sufficiency of the affidavit. Although Jefferson's *pro se* filing is rather disorganized, the court has been able to glean from it several

-8-

arguments. Jefferson contends that the affidavit is insufficient to establish probable cause because police never independently corroborated the allegations of the CW and the CI, and because neither the CI nor the CW provided sufficient detail in describing when they observed the drugs, guns and body armor in the apartment. Jefferson also argues that the CW should be considered unreliable because the CW was not a victim, and because the CW took part in some illegal dealings.[2] All of these arguments attack the sufficiency of the evidence in the record supporting the initial finding of probable cause by the state circuit court judge who issued the warrant. In light of these objections, the court will consider *de novo* whether the search warrant was valid under the Fourth Amendment.

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause exists where the totality of the circumstances would lead a reasonable person to believe that a search will turn up evidence of a crime. *See United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Where a warrant has in fact been issued, a

---

[2]Jefferson also contends that the court should view an informant's tip differently because the underlying criminal activity in this case is "victimless." The court rejects this argument. While police must be more cautious when dealing with informant reports of "victimless or status crime," *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991), the court does not consider the crimes for which police suspected Jefferson to have been truly victimless. Police believed Jefferson to be a convicted felon distributing crack cocaine from the apartment to be searched, and to be in possession of multiple firearms and body armor. *Cf.*, *Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991) (characterizing crime of being a felon in possession of a firearm as a victimless or status crime); *United States v. Mayomi*, 873 F.2d 1049, 1055 (7th Cir. 1989) (characterizing tax evasion as a victimless crime).

-9-

reviewing court must give great deference to the probable cause determination of the judicial officer who issued it. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983). Further, "[w]hen an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the affidavit." *United States v. Peck*, 317 F.3d 754, 755-56 (7th Cir. 2003) (citation omitted). Therefore, in determining the validity of a search warrant, the court only considers whether the affidavit provided the judge issuing the warrant with a substantial basis for determining that probable cause existed. *See Gates*, 462 U.S. at 239; *United States v. Sims*, 551 F.3d 640, 643-44 (7th Cir. 2008).

When an informant's tip provides the foundation for probable cause, the court must also consider the totality of the circumstances in assessing the reliability of the tip. *See Gates*, 462 U.S. at 230-31. Specifically, the court considers the following factors:

> (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant.

*United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008) (citation omitted). The court also considers whether the informant presented an affidavit or otherwise appeared before the judicial officer issuing the warrant. *Id.*

The court will first assess whether the affidavit attached to the warrant provided substantial evidence to support a finding of probable cause to search for

cocaine and drug-related paraphernalia. The magistrate found that it did. In support of this conclusion, the magistrate noted that the CW had personally observed the cocaine within 72 hours of the warrant being issued, and that the CW provided personal details about Jefferson that police were able to corroborate through their own investigation and with the help of the CI. (Recommendation and Order, March 18, 2009, 6-7, Docket #19). The magistrate also cited to the Seventh Circuit's decision in *United States v. Garcia*, 528 F.3d 481 (7th Cir. 2008), as a case analogous to Jefferson's case. Upon review of *Garcia*, the factual similarities with this case are immediately apparent.

In *Garcia*, the Seventh Circuit affirmed the district court's denial of a motion to suppress evidence of cocaine possession and trafficking seized pursuant to a search warrant. *Id.* at 488. The defendant in that case claimed that the warrant, which was supported by an informant's tip, was issued without probable cause. *Id.* at 485-86. The affidavit in support of the warrant lacked some relevant details from the informant, including "how the informant came to be inside the apartment, who was in the apartment at the time, or how much cocaine he saw." *Id.* at 486. However, the court of appeals concluded that the affidavit provided sufficient evidence to support a finding of probable cause:

> The information obtained from the informant was based on firsthand observations. The affidavit specifically stated that the informant had been inside the apartment and had observed a substance he believed to be cocaine, packaged in a plastic baggie, in the living room. The affidavit also explained that the informant believed the substance was cocaine because he had been involved in selling cocaine in the past.

-11-

> The time lapse between the officers acquiring of the information and their application for the warrant-no more than 72 hours-was short. And the affidavit provided information to establish the credibility of the informant: the informant had previously provided information leading to the arrest of at least three other individuals.

*Id.* at 486.

Here, as in *Garcia*, the affidavit in support of the warrant states that an informant, the CW, observed packaged crack cocaine inside the apartment to be searched within 72 hours of the application for the warrant. The affidavit also establishes that the CW believed the substance was crack cocaine from past experience witnessing Jefferson package, sell and distribute the substance. The affidavit in this case similarly lacks some detail, including exactly when the CW was in the apartment, why the CW was in the apartment or how much crack cocaine the CW saw in the apartment. As with all precedent, some facts do distinguish *Garcia* from this case. For example, the CW is not alleged to have helped police in the past. Yet, other indicia of reliability are present. The affidavit states that the CW voluntarily came forward to provide information against his or her penal interest, and the CW provided detailed personal information about Jefferson that police were able to verify. The affidavit also states that another informant, the CI, corroborated information that Jefferson possessed the guns, body armor and narcotics.

In considering the reliability of an informant, the court recognizes that when some of the information provided by an informant is corroborated, credibility may be given to the rest of that informant's tip. *See United States v. Spach*, 518 F.2d 866,

-12-

871 (7th Cir. 1975). Moreover, statements made by an informant against his or her penal interest provide further support to that informant's credibility. *See United States v. Barnes*, 909 F.2d 1059, 1069 (7th Cir. 1990). While undoubtedly a close question, the court is satisfied that, based on the totality of the circumstances, the circuit court judge's finding of probable cause to search the apartment in question for cocaine and drug-related paraphernalia was backed by substantial evidence. The two informants cited in the affidavit, the CW and the CI, partially corroborated each other's story, and the CW provided verifiable and detailed personal information about Jefferson. The CW further provided timely, firsthand knowledge of an object of the search – i.e. the baggy of cocaine inside the apartment. Jefferson is correct that police could have conducted a more thorough, independent investigation before seeking a search warrant, such as setting up surveillance or a controlled buy. *See United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) (noting independent police investigation provides great weight to an informant's tip). To be sure, police could have also brought the CW in to testify or swear to a statement under oath. But in this case, the court finds that the Fourth Amendment did not require police to do so.

Next, the court addresses whether the affidavit attached to the warrant provided substantial evidence to support a finding of probable cause to search for firearms and body armor. On this issue, the court will adopt the magistrate's finding that the affidavit in support of the search warrant did not establish probable cause.[3]

---

[3]Neither party objects to the magistrate's finding on this point.

The affidavit alleges that the CI and CW had seen Jefferson in possession of specific firearms and body armor at some point, but it does not specify when Jefferson possessed these items or when these items were observed in the apartment. Therefore, the affidavit lacked the detail sufficient for a reasonably prudent person to believe that a search of the apartment would uncover the guns and body armor. This conclusion, however, does not require the court to suppress the evidence of firearms actually seized during the search. As the Supreme Court recently reaffirmed, exclusion of evidence seized as a result of an unreasonable search in violation of the Fourth Amendment is a last resort, rather than a first impulse. *See Herring v. United States*, 129 S.Ct. 695, 700 (2009).

Having found the search warrant in this case provided sufficient probable cause to search the apartment for cocaine and drug-related paraphernalia, the court finds that the evidence of firearms seized need not be suppressed because the inevitable discovery exception applies. Under this exception, evidence seized during the course of an unlawful search need not be suppressed if that evidence would have inevitably been discovered even if no constitutional violation had occurred. *See Nix v. Williams*, 467 U.S. 431, 434-48 (1984) (adopting the inevitable discovery exception to the exclusionary rule). Here, despite lacking probable cause to search the apartment for firearms and body armor, police did have probable cause to search for cocaine and drug-related paraphernalia. As a result, police were lawfully inside the apartment when they discovered and seized two guns, the possession of which

-14-

Jefferson is now charged. And, as the magistrate found, a search of the apartment for cocaine put the guns in plain view of police officers carrying out that search. Since, at the time of the search, police were aware of Jefferson's prior convictions for felony conduct, the presence of guns in Jefferson's residence alone was sufficient for police to seize them as evidence of a crime. *See United States v. Langford*, 314 F.3d 892 (7th Cir. 2002) (holding that a gun discovered in plain view during a search for drugs could not be seized unless it appeared to be evidence of a crime). Therefore, the court concludes that evidence of firearms seized during the search of the apartment need not be excluded from the government's case against Jefferson.

Finally, even if the court had found the search warrant in this case wholly invalid, the court would not be inclined to order that the evidence seized be excluded. The fruits of a search made pursuant to a warrant later declared invalid should not be suppressed if police who executed the warrant did so in good faith reliance on a judicial officer's finding of probable cause. *See United States v. Leon*, 468 U.S. 897, 924 (1984). Obtaining a search warrant is prima facie evidence that police acted in good faith. *United States v. Watts*, 535 F.3d 650, 657 (7th Cir. 2008) (citing *Leon*, 468 U.S. at 920-21). To rebut this presumption of good faith, Jefferson must show "that the supporting affidavit is so facially deficient that no reasonable officer could have relied upon it." *Watts*, 535 F.3d at 657 (citation omitted).

In his objection, Jefferson asserts that the MPD officer who completed the affidavit could not have reasonably relied on a judge's finding of probable cause because the officer had experience seeking drug-related search warrants using informants, which made him aware of the deficiencies in the affidavit. It is true that the good faith exception does not apply where the officer who completed the affidavit intentionally or recklessly misled the judicial officer who issued the warrant. *Leon*, 468 U.S. at 923. However, other than Jefferson's bare assertion of misconduct, the court finds no evidence that the MPD officer who completed the affidavit in this case acted to recklessly or intentionally mislead the circuit court judge. Nor is the court convinced that the state circuit court judge who signed the warrant "wholly abandoned his judicial role," or that the affidavit in question was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975)). Because the court is unable to conclude that the supporting affidavit was "so deficient that a reasonable officer would necessarily have questioned it," *Watts*, 535 F.3d at 650, the court finds that the good faith exception to the exclusionary rule would apply in this case. For these reasons, the court will adopt the magistrate's recommendation and deny Jefferson's motion to suppress.

2.   **Motion to Compel**

Jefferson also moved to compel the government to disclose the identity of the confidential informant mentioned in the affidavit, claiming that the informant was

"plainly a transactional witness and, therefore, due process requires that Jefferson learn the informant's identity." (Motion to Compel, February 26, 2009, Docket #15). Because Jefferson's motion to compel is a nondispositive pretrial motion, the court will only disturb the magistrate's order if it was clearly erroneous or otherwise contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a) (defining procedure for nondispositive motions before a magistrate judge). The court finds that it was not.

In considering whether the government is required to disclose the identity of an informant, the court balances "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). The court must also consider the informant's role in the alleged criminality. *See United States v. Harris*, 531 F.3d 507, 515 (7th Cir. 2008). In general, the identity of an informant "whose only role was to provide police with the relevant information that served as the foundation for obtaining a search warrant" need not be disclosed. *Id.* In contrast, disclosure may be required if the informant "participated in the crime charged against the defendant or witnessed the event in question." *Id.*

The magistrate construed Jefferson's motion to be requesting the disclosure of the identity of the CW, rather than the CI mentioned in the affidavit. The magistrate found that because the crime for which Jefferson is charged did not require a showing of actual distribution of cocaine or a conspiracy to do so, there

-17-

were no true transactional witnesses to testify in this case. After weighing the defendant's interest in a fair trial against the public's interest in obtaining information necessary to detect and prosecute those who commit crimes, the magistrate concluded that disclosure was not appropriate. (Recommendation and Order, March 18, 2009, 11-12, Docket #19).

Jefferson objects claiming that because the CW provided information against his or her penal interest, the CW must have been involved in the drug trade within the apartment. Therefore, Jefferson argues that the CW is a transactional witness. Jefferson claims that testimony from the CW could provide evidence of who was in control of the apartment searched and the cocaine and gun found therein. The court is obliged to overrule Jefferson's objections. Like the informant in *Harris*, there is no reason to believe, other than Jefferson's speculation, that the CW played any role in Jefferson's possession of crack cocaine and a firearm. Even if the CW was involved in alleged selling of crack cocaine, Jefferson has not been charged for those activities. Moreover, Jefferson never claims that he was not in control of the residence that police searched. This is generally all that would be needed to establish Jefferson's possession of the items seized therein. *See generally United States v. Hopson*, 39 F.3d 795, 801 (7th Cir. 1994) (holding that government may prove constructive possession of contraband by showing defendant's dominion and control over the premises in which the contraband is found). Therefore, the court

finds that the magistrate did not commit a clear error and, therefore, affirms the magistrate's order.

Accordingly,

**IT IS ORDERED** that defendant's motion for leave to file *pro se* objections (Docket #20) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the magistrate's recommendation that defendant's motion to suppress be denied (Docket #19) be and the same is hereby **ADOPTED**;

**IT IS FURTHER ORDERED** that defendant's motion to suppress evidence (Docket #14) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the magistrate's order denying defendant's motion to compel disclosure of a confidential informant (Docket #19) be and the same is hereby **AFFIRMED**;

Dated at Milwaukee, Wisconsin, this 4th day of May, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge